IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>DESEAN LYNN FRANKLIN,<br><br>  Defendant. | No. 23-03129-01-CR-S-BP |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Teresa A. Moore, United States Attorney, and Stephanie L. Wan, Assistant United States Attorney, and the defendant, Desean Lynn Franklin ("the defendant"), represented by Amanda Brown.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to Count 1 of the indictment, charging him with a violation of 18 U.S.C. § 933(a)(1), that is, conspiracy to traffick in firearms. By entering into this plea agreement, the defendant admits that he knowingly committed this offense, and is, in fact, guilty of this offense.

Page 1 of 17

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

On August 12, 2023, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Greene County, Missouri, Sheriff's Office ("GCSO") and Springfield, Missouri, Police Department ("SPD") conducted surveillance at the RK Gun Show, located at 3001 North Grant, Springfield, Greene County, Western District of Missouri. The purpose of the surveillance was to surveil members and associates of the Fuck The Opps ("FTO") and Only Da Brothers ("ODB") gangs. Recent information received from sources indicated both groups were selling/purchasing firearms from Federal Firearms Licensees ("FFLs") and private citizens. The sources stated the members were selling their crime guns after they were used in shootings. After selling their crime guns, they would either purchase new firearms or used firearms during the gun shows.

At approximately 9:10 a.m., investigators saw Desean L. FRANKLIN, and his girlfriend, Raimaiya L. Tyson arrive at the gun show in a blue Dodge Charger. The Dodge Charger was registered to Tyson.

According to FRANKLIN's criminal history, FRANKLIN has a pending felony case for unlawful possession of a controlled drug with intent to distribute and possession of a firearm during commission of a felony out of Caddo County, Oklahoma, in Case No. CF-2023-00057, stemming from an April 3, 2023, arrest. FRANKLIN's initial appearance on that case occurred on April 4, 2023. He was released on bond on April 5, 2023. Further, FRANKLIN has an outstanding warrant, dated December 4, 2020, for "Marijuana – Sell" out of Ness City, Kansas, in Case No. 2020CR94. According to Tyson's criminal history and court records, Tyson has a pending case for the felonies of possession of a controlled substance and unlawful use of a weapon out of Henry County, Missouri, in Case No. 23HE-CR001166. Tyson was arraigned on that case on June 9, 2023. As a result of their pending cases, neither FRANKLIN nor Tyson are legally able to receive firearms.

FRANKLIN and Tyson entered the gun show and proceeded to a table occupied by FFL Keith's Guns. Tyson appeared to attempt to purchase a Draco pistol. Tyson completed an ATF Form 4473, Firearms Transaction Record. ATF Form 4473 is also used to conduct background checks for the purchase of firearms. Tyson was denied and unable to purchase the firearm because she had a pending felony case out of Henry County, Missouri. At 9:45 a.m., both left the gun show in the Dodge Charger.

At approximately 10:32 a.m., the Dodge Charger arrived back at the gun show. Surveillance units saw FRANKLIN and a male, later determined to be Joseph M. Johnson, walk toward the door of the gun show. Johnson has younger family members that are believed to be ODBs. Tyson stayed in the Dodge Charger. Johnson and FRANKLIN entered the gun show and proceeded to FFL Hunts Hardware. Hunts Hardware's table was located near the table occupied by Keith's Guns. Both FRANKLIN and Johnson looked at a firearm, believed to be a Draco pistol, while standing at the Hunts Hardware table. Then, FRANKLIN and Johnson left the table and went to the restroom. Johnson immediately exited the restroom, and went back to the Hunts Hardware table

alone. Johnson completed an ATF Form 4473 for a firearm purchase. Johnson purchased a Draco pistol from Hunts Hardware. It appeared that he paid for the firearm in cash. After taking possession of the pistol in a box, he left the building and entered the Dodge Charger. FRANKLIN, Tyson, and Johnson left the gun show in the Dodge. Surveillance units followed the Dodge and saw it arrive at a home on West Franklin in Springfield, Greene County, Western District of Missouri, believed to be the residence of FRANKLIN and Tyson. All three entered the residence, and Johnson carried the firearm box inside. After 30 minutes of surveillance at the residence, surveillance saw Tyson leave in the Dodge. It did not appear that Tyson had the firearm box with her.

An ATF Special Agent (SA) knew that Johnson lives at a residence on North Washington, Springfield, Greene County, Western District of Missouri. According to a previous SPD report by an ATF Task Force Officer (TFO), on March 29, 2023, he stopped a vehicle occupied by ODB members at Johnson's residence. During the traffic stop, Johnson approached the traffic stop on foot, from the residence, and told the TFO that his nephew, the driver of the vehicle, was bringing him a Glock pistol that he had left at an unnamed "studio" the previous night. During the stop, the TFO seized three firearms, including the firearm allegedly belonging to Johnson, from the vehicle. Johnson confirmed that he resided at the North Washington address during that traffic stop.

On August 15, 2023, the ATF SA obtained the ATF Form 4473 from Tyson's attempted purchase from Keith's Custom Guns. During his conversation with the employee at Keith's Custom Guns that Tyson spoke to, they stated they remembered their conversation with Tyson. The employee stated Tyson was trying to buy a Draco pistol, but it was a delayed transaction when they called the purchase into the National Instant Criminal Background Check System (NICS). Tyson told the employee they thought they had previously been denied a firearm transaction from Keith's Custom Guns once before. When filling out the form, Tyson responded "No" to Questions 21.d. which asked "Are you under indictment or information in any for court for a felony, or any other crime for which the judge could imprison you for more than one year, or are you a current military member who has been charged with violation(s) of the Uniform Code of Military Justice and whose charge(s) have been referred to a general court-martial?" The SA also found that Tyson had listed her address incorrectly.

The SA checked denials for Tyson and found she had one additional denial. This attempted purchase occurred on February 28, 2023, from Anchor Tactical Supply, 2346 South Campbell Avenue, Springfield Greene County, Western District of Missouri. The purchase was denied based on the pending felony case out of Henry County, Missouri. The NICS notes show it was denied for a prohibition under Title 18 U.S.C. 922(g)(3).

Also on August 15, 2023, the SA obtained the ATF Form 4473 for Johnson's purchase. It showed Johnson purchased a Romarm, Micro Draco, 7.62 caliber, semi-automatic pistol, serial number 23PMD-39804. The gun actually purchased by Johnson was similar to the firearm that Tyson attempted to purchase. Further, it appears that, when filling out the form, Johnson originally marked box 21(a), which asks "Are you the actual transferee/buyer of all of the firearm(s) listed on this form and any continuation sheet(s)(ATF Form 5300.9A)?," as "No," but scratched it out,

and marked "Yes" with his initials. Johnson also answered "No" to question 21.b. which read, "Do you intent to purchase or acquire any firearm listed on this form and any continuation sheet(s), or ammunition, for sale or other disposition to any person described in questions 21(c)-(m), or to a person described in question 21.n.1 who does not fall within a nonimmigrant alien exception?"[7]

On August 18, 2023, an ATF SA and Firearm Interstate Nexus Expert, was consulted about the firearm purchased by Johnson. According to the SA, it was his opinion that if this firearm was received and/or possessed in the State of Missouri, it traveled in or affected interstate and/or foreign commerce.

On September 11, 2023, the SA obtained the Oklahoma Highway Patrol report which led to FRANKLIN's felony charges in Caddo County, Oklahoma. According to the report, FRANKLIN, and Tyson were stopped on the highway on April 4, 2023, after witnessing traffic violations. A search of the vehicle revealed ten small bags of marijuana, and four large bags of marijuana. Each large bag of marijuana weighed approximately one pound. In total, the trooper believed the marijuana weighed approximately 6.5 pounds. Also located in the vehicle was a Sig Sauer, P239, .40 caliber, semi-automatic pistol. FRANKLIN took responsibility for everything in the vehicle.

On September 18, 2023, the SA obtained the certified court documents related to Tyson's pending felony case in Henry County, Missouri. On March 13, 2023, Tyson was charged with felony possession of controlled substances and unlawful use of a weapon. The charges arose out of an incident that occurred on September 9, 2022, where a trooper with the Missouri State Highway Patrol stopped Tyson for a traffic violation. The trooper searched Tyson's vehicle and found she was in possession of psilocyn and a Taurus firearm.

On August 31, 2023, GCSO deputies conducted a traffic stop of the blue Dodge Charger registered to Tyson. The vehicle was stopped for a license plate violation, a cracked windshield, and speeding. The vehicle was stopped at Arby's, 230 South West Bypass, Springfield, Greene County, Western District of Missouri. As the GCSO deputy pulled up behind the Charger, several people got out of the vehicle and walked away. FRANKLIN was the driver of the vehicle. The passengers were later identified as Quartez Washington, and Sothern-Johnson. Another individual was still in the vehicle, Elysha Bedell, who was still in the vehicle because he was paralyzed.

During the stop, FRANKLIN confirmed his license was suspended. Further, FRANKLIN admitted to having a firearm in the vehicle and the firearm belonged to him. FRANKLIN told officers his firearm was in the front passenger floorboard. The firearm was retrieved and identified as a Micro Draco, 7.62 caliber, semi-automatic pistol, bearing serial number 23PND39804. Also located in the vehicle was a loaded Smith and Wesson, M&P 5.7, 5.7 caliber semi-automatic pistol bearing serial number PJS7678 near the driver's seat and center console, a Sig Sauer, P320, 9mm, semi-automatic pistol, bearing serial number FCU346922 under a backpack on the reap passenger seat, and a 9mm drug magazine in the trunk of the vehicle.

---

[7] Question 21.d. includes anyone under indictment or information in any court for a felony.

Case 6:23-cr-03129-BP   Document 84   Filed 11/25/24   Page 4 of 17

Bedell also told a deputy that he had a firearm concealed on his person, and a Glock, 21C, .45 caliber semi-automatic pistol bearing serial number DMG712US, with an extended magazine, was seized off of Bedell.

While at the stop, Tyson arrived and attempted to take possession of the Dodge Charger. She claimed to have ownership paperwork for the Micro Draco pistol. She stated she would retrieve the paperwork and provide it to detectives. To date, Tyson has not provided any paperwork for the Micro Draco.

During the stop, FRANKLIN claimed the Micro Draco, Washington claimed the Smith and Wesson, Bedell claimed the Glock, and Johnson claimed the Sig Sauer. During the stop, FRANKLIN and the deputy discussed whether FRANKLIN was able to legally have a weapon. FRANKLIN said that he was able to purchase the gun from the gun show at the fairgrounds.

The Micro Draco was confirmed, by the ATF SA and through firearm trace reports, to be the firearm purchased by Johnson from Hunt's Hardware, just nineteen days prior, on August 12, 2023.

On September 1, 2023, an ATF TFO test-fired the firearms seized by GCSO on August 31, 2023, including the Micro Draco. He found that all four firearms functioned as designed.

FRANKLIN admits that between August 12, 2023, and August 31, 2023, said dates being approximate, within Greene County, in the Western District of Missouri, and elsewhere, he knowingly and intentionally combined, conspired, and agreed with others, known and unknown, to knowingly receive from another person any firearm in or otherwise affecting interstate or foreign commerce, if the recipient knows or has reasonable cause to believe that such receipt would constitute a felony, in violation of Title 18, United States Code, Section 933(a)(3) and (b).

4. **<u>Use of Factual Admissions and Relevant Conduct.</u>** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as

"relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count 1 of the indictment, charging him with conspiracy to traffick in firearms, the maximum penalty the Court may impose is not more than 15 years' imprisonment, not more than 3 years' supervised release, a $250,000 fine, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to 3 years;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to 2 years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed 3 years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

Page 6 of 17

Case 6:23-cr-03129-BP   Document 84   Filed 11/25/24   Page 6 of 17

    f.  any sentence of imprisonment imposed by the Court will not allow for parole;

    g.  the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

    h.  the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

  7.  **<u>Government's Agreements.</u>**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to conspiracy to traffick in firearms for which it has venue and which arose out of the defendant's conduct described above in Paragraph 2. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Count 6, illegal receipt of a firearm by a person under indictment, at sentencing.

  The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

  The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional

Page 7 of 17

Case 6:23-cr-03129-BP  Document 84  Filed 11/25/24  Page 7 of 17

charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable

Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a.    The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b.    The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2K2.1;

    c.    There is no agreement between the parties regarding the applicable enhancements. The parties agree that the Court will determine the applicable enhancements after receipt of the presentence investigation report prepared by the United States Probation Office and after the parties have had an opportunity to be heard on the applicable enhancements;

    d.    The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

    e.    There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

    f.    The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

Page 9 of 17

Case 6:23-cr-03129-BP     Document 84     Filed 11/25/24     Page 9 of 17

g. The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the United States does not agree that a sentence outside the Guidelines range is appropriate, the defendant may argue for a sentence outside the Guidelines range. Similarly, the Government may agree for any sentence within the range of punishment, even if the sentence is outside the Guidelines range.

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

i. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to

void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charge in the indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentence imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against him;

    e. the right to compel or subpoena witnesses to appear on his behalf; and

    f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offense to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

    a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

    b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the

indictment which are to be dismissed and all other uncharged, related criminal activity;

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

d. Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

h. The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be

interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Dated: 11-25-2024

By *[signature]*

**Teresa A. Moore**
United States Attorney

**Stephanie L. Wan**
Assistant United States Attorney
Missouri Bar No. 58918

*[Signatures continue on the following page.]*

Page **16** of 17

Case 6:23-cr-03129-BP   Document 84   Filed 11/25/24   Page 16 of 17

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 11-25-24

**Desean Lynn Franklin**
Defendant

I am defendant Desean Lynn Franklin's attorney. I have fully explained to him his rights with respect to the offenses charged in the indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Desean Lynn Franklin's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 11-25-24

**Amanda Brown**
Attorney for Defendant